UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

K.B. BY MOTHER, NEXT FRIEND,
AND GUARDIAN T.B., ET. AL.,

                         Plaintiffs,              Case No. 18-11795

v                                         HONORABLE THOMAS L. LUDINGTON

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
NICK LYON, RICHARD SNYDER,

                         Defendants.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR CORRECTED JUDICIAL
ASSIGNMENT AND GRANTING DEFENDANTS' MOTION TO DISMISS IN PART**

On June 6, 2018, Plaintiffs filed a complaint against Defendants the Michigan Department of Health and Human Services, Nick Lyon, and Richard Snyder. Compl., ECF No. 1. Plaintiffs are Michigan children and their families who claim that Defendants are providing them with inadequate mental health care. *Id.*

On September 7, 2018, Defendants filed a motion to dismiss Plaintiffs' claims. ECF No. 17. Plaintiffs filed a response and Defendants filed a reply. ECF No. 20, 21. On October 29, 2018, Plaintiffs filed a motion for leave to file a sur-reply in opposition to Defendants' reply. ECF No. 22. On November 7, 2018, the motion was denied. ECF No. 23. The next day, Plaintiffs filed a motion for corrected judicial assignment from the Northern Division of the Eastern District of Michigan to the Southern Division of the Eastern District of Michigan. ECF No. 24. For the following reasons, Plaintiffs' motion for corrected judicial assignment will be denied and Defendants' motion to dismiss will be granted in part.

**I.**

Plaintiffs bring their claim as a class action on behalf of "[a]ll current or future Michigan Medicaid beneficiaries under the age of 21 with a behavioral, emotional, or psychiatric disorder who are or may be eligible for, but are not receiving, home and community-based services." ECF No. 1 at 12. Plaintiffs contend that Defendants' failure to provide adequate mental health care services in their homes and communities have required some Plaintiffs to enter institutions (such as psychiatric hospitals and juvenile delinquency facilities) while the other Plaintiffs are at risk of requiring institutionalization in the future. *Id.* at 3.

Nationally, the Medicaid program is funded through joint contributions by federal and state governments. *Id.* at 15. If a state wishes to participate in the Medicaid program and receive federal funding, it must comply with certain requirements. *Id.* at 16. One of these requirements is that it provide Early and Periodic Screening, Diagnosis, and Treatment services ("EPSDT") for eligible individuals. *Id.* The state of Michigan receives Medicaid funds to assist in its facilitation and provision of health services. *Id.* at 15.

Defendant the Michigan Department of Health (the "Department") is responsible for facilitating the Medicaid program throughout Michigan. *Id.* To assist in this, the Department has contracted with ten Prepaid Inpatient Health Plans ("PIHPs") and local County Medical Health Service Programs ("CMHSP") to provide health services. *Id.* at 17. Plaintiffs contend that the PIHPs are not fulfilling Medicaid's requirements and as such, the Department should be held responsible. Plaintiffs raise six claims against Defendants for violating the following: the federal Medicaid EPSDT Mandate, the federal Medicaid reasonable promptness requirement, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the due process provisions of the Medicaid Act, and due process rights under the Fourteenth Amendment.

The complaint lists seven plaintiffs: K.B. and M.B. from Roscommon County, P.S. from Muskegon County, G.P. from Iron County, D.P. from Isabella County, G.G. from Lapeer County, and J.W. from Ingham County. *Id.* at 6–10. Each of these Plaintiffs claim to have mental health needs that Defendants are not adequately addressing. Plaintiffs estimate that the class numbers more than 32,000 individuals with approximately half of the class residing in the counties located within the Southern Division of the Eastern District of Michigan. ECF No. 25 at 3.

Plaintiffs' motion for judicial reassignment will be addressed followed by Defendants' motion to dismiss.

## II.

Plaintiffs contend that they filed their complaint seeking its assignment to the Southern Division of the Eastern District of Michigan. ECF No. 25 at 4. When completing the Civil Cover Sheet, Plaintiffs selected Lapeer County as the "County in which action arose" because Lapeer is the county where Plaintiff G.G. resides, the fifth named Plaintiff in the complaint. *Id.* at 5. Plaintiffs explain that they selected Lapeer County intentionally because it is within the Southern Division. The Southern Division has 20 assigned U.S. District Judges. The Northern Division has but one. When entering the names of the individual plaintiffs in the Civil Cover Sheet and on the complaint, Plaintiffs listed K.B. as the first plaintiff, who resides in Roscommon County which is located in the Northern Division.

Plaintiffs' preference for the Southern Division is grounded on their assertion that they believe that over half of the putative class resides in the Southern Division. ECF No. 25 at 2. Plaintiffs also prefer the Southern Division because Plaintiffs' lead attorney, David Honigman, has a "severe medical condition that can be exacerbated by travel to the Bay City courthouse, and even

result in death." *Id.* at 11. Plaintiffs contend that trying the case in the Southern Division rather than the Northern Division would be better for Mr. Honigman's health.

After filing, Plaintiffs' complaint was initially assigned to the Southern Division. One day later, a "Notice of Corrected Judicial Assignment Due to Clerical Error" was entered by the Court's Clerk. ECF No. 8. The notice explained that according to Administrative Order No. 11-AO-016, Plaintiffs' complaint was being reassigned to the Northern Division because of an attorney's error. *Id.* Administrative Order 11-AO-016 provides:

> It appearing that when a CM/ECF filing user erroneously identifies the county where the civil action arose, it can result in an improper assignment to a place of holding court, as well as a mistaken designation of the presiding judicial officer;
>
> It further appearing that pursuant to Local Rule 83.10(c), if a case is improperly assigned to a place of holding court, then the case shall be transferred to the proper location by order of the Court;
>
> NOW THEREFORE IT IS ORDERED that if it reasonably appears an attorney through a clerical error has incorrectly identified the county where the civil action arose, then in the interests of the administrative efficiency of the Court, the Clerk is directed to correct such an improper judicial assignment by entering a Notice of Judicial Assignment. The Notice shall include a notation that it is entered pursuant to this Administrative Order and that it was made necessary due to the filing attorney's clerical error.

Plaintiffs contacted the Clerk's office and were told that the case was reassigned because the first named plaintiff resided in a county within the Northern Division. ECF No. 25 at 6. Plaintiffs now bring this motion to correct the judicial assignment of the case to the Southern Division of the Court to be randomly assigned to a judge of the Court.

## A.

Assignment of cases is governed by Local Rule 83.10(b) which provides:

(b) Civil cases shall be assigned by the Clerk to a place of holding court by reference to the counties in (a) in the following order of priority:

1) If an action is removed from State Court, the county in which the case was pending in State Court (28 U.S.C. §1441(a)).

2) If an action is local in nature, the county in which the real estate is located.

3) The county in which a plaintiff resides.

4) The county in which the claim arose.

5) In a case in which a defendant is an officer or employee of the United States or any agency thereof acting in his or her official capacity, or under color of legal authority, or an agency of the United States, the county in which an office of a defendant is located.

6) A county in which a defendant resides or has a place of business.

7) The place of holding court in which the case is filed.

L.R. 83.10(b). The rule goes on to explain that "[a] case improperly assigned to a place of holding court shall be transferred to the proper location by order of the Court." L.R. 83.10(c). 28 U.S.C. §1404 also provides that a district court "[f]or the convenience of parties and witnesses, in the interest of justice,…may transfer any civil action to any other district or division where it might have been brought…" 28 U.S.C. §1404(a).

Local Rules 83.10(b)(1)–(2) do not apply to Plaintiffs' claim because this action was not removed from state court nor is it local in nature. The next factor in the order of 83.10(b)'s priority is "[t]he county in which a plaintiff resides" followed by the factor "[t]he county in which the claim arose." L.R. 83.10(b)(3)–(4). The rule however, does not state that a case is assigned based on the county of residence of the *first* plaintiff listed in the complaint. Rather, it provides that it is assigned based on the county of residence of "*a* plaintiff." *Id.* (emphasis added). G.G. is a resident of Lapeer County. Thus, the complaint could have been assigned to the Southern Division where G.G. resides, the Northern Division where D.P., K.B., and M.B. reside, or the Western District of Michigan where P.S., J.W., and G.P. reside.

The ECF User Manual on the Eastern District of Michigan (the "Manual") does not specifically address how a case will be assigned when it involves multiple plaintiffs. It instructs the plaintiff to select the appropriate county according to Local Rule 83.10. However, the Manual

misquotes the rule by stating "[t]he county in which *the* plaintiff resides" rather than stating "[t]he county in which *a* plaintiff resides." <u>Electronic Case Filing User Manual</u>, U.S. District Court Eastern District of Michigan, 29 (2015) https://www.mied.uscourts.gov/pdffiles/ECF_user_manual.pdf (emphasis added); L.R. 8.10(b)(3) (emphasis added). When filing a complaint, the plaintiff is prompted to "Enter the county in which action arose" and then "Enter county in which the first listed plaintiff resides." *See supra* Electronic Case Filing User Manual, 45.

The Civil Cover Sheet used to file a complaint instructs the plaintiff that the complaint will be assigned according to Local Rule 83.10. The sheet asks the plaintiff to identify the county of the first named plaintiff, but does not inquire about the county of any other plaintiff. Accordingly, the case is assigned to the county of the first listed plaintiff because Rule 83.10 provides that the county of a plaintiff is given priority over the county where the incident occurred. Plaintiffs contend that they were unaware of this nuance, notwithstanding the fact that Rule 83.10 (and the Civil Cover Sheet referencing Rule 83.10) provide that priority is given to the county of a plaintiff's residence and not the county where the incident occurred.

**B.**

Even if Plaintiffs were responsible for the assignment of the case to the Northern Division under Rule 83.10 because of the way in which they completed the Civil Cover Sheet, they have not presented sufficient justification for the Court to reassign the case. 28 U.S.C. §1404(b) provides "[u]pon motion…any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." The standards governing transfer pursuant to §1404(b) are the same as those of §1404(a), but are set to a less rigorous degree. *Braxton v. Heritier*, No. 14-

12054, 2015 WL 5546998 at *1 (E.D. Mich. Aug. 21, 2015) (holding that "the statute governing intradistrict transfers is 28 U.S.C. §1404(b). Such transfers are governed by the same standards as those under 28 U.S.C. §1404(a), 'but apparently judged by a less rigorous standard.'") (citing *Breech v. Liberty Mut. Ins. Co.*, No. 15-2633, 20150 WL 4465064 (S.D. Ohio 1989)). These factors are:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (2000 E.D. Mich.).

Plaintiffs have provided no information as to the location of their intended witnesses, "relevant documents," or "sources of proof." There is no reason at this stage of the development of the case to conclude that transferring the case to the Southern Division will provide ready access to any of these. However, at such an early stage in the development of their case, it is not practical to expect Plaintiffs to know the location of this information. As such, it would be premature to come to a determination on these factors.

However, as represented by Plaintiffs, the locus of operative facts does not center in the Southern Division. By Plaintiffs' own admission, "the events and omissions that are the subject matter of this aggregate litigation have occurred, and continue to occur, in *every* Michigan county and therefore arise in *every* Michigan county." ECF No. 25 at 2 (emphasis added). Furthermore, only one of the seven named Plaintiffs resides in the Southern Division. Accordingly, the Northern Division is just as suitable as the Southern Division.

Plaintiffs further contend that the case should be reassigned because their lead attorney, Dave Honigman, has a "severe medical condition that can be exacerbated by travel to the Bay City

courthouse, and even result in death." ECF No. 25 at 11. Mr. Honigman however, is one of Plaintiffs' attorneys and not a party. *See Chicago, Rock Island and Pac. R.R. Co. v. Igoe*, 220 F. 2d 299, 304 (7th Cir. 1955) (holding that the convenience of counsel is not a factor to be considered in a motion to transfer). And as Defendants note, Mr. Honigman is only one of seven attorneys representing Plaintiffs. Plaintiffs have not presented any information that keeping the case in the Northern Division would inconvenience or endanger the wellbeing of any of the Plaintiffs or the other six attorneys representing the Plaintiffs.

Defendants also note that Mr. Honigman has appeared in cases within the last two years in California, Tennessee, and New York. ECF No. 14. The distance from Mr. Honigman's office in Troy to these venues is much farther than the distance to Bay City, Michigan. Mr. Honigman contends that travelling for those cases was not as hazardous to his health because it was accomplished by airplane. ECF No. 28 at 6–7 ("Although travel by airplane poses some risk to Mr. Honigman's health and can induce considerable pain, the pain and risks caused by airplane travel are much less than travel by car.") The Bay City courthouse is however, close to an airport. The MBS International Airport is 15 miles from the courthouse.

Plaintiffs' motion for judicial reassignment will not be granted because the factors discussed above, at least at this stage of the case's development, do not weigh in favor of reassignment.

## III.

Defendants have moved for dismissal of all six of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the

pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

## A.

Count I of Plaintiffs' complaint alleges that Defendants "have failed to provide the Plaintiffs and class Members with intensive home and community-based mental health services necessary to correct or ameliorate their conditions" in violation of three statutes: 42 U.S.C. §1396a(a)(10)(A), 42 U.S.C. §1396d(a)(4)(B), and 42 U.S.C. 1396a(a)(43)(C). ECF No. 1 at 52.

The first statute, §1396a(a)(10)(A), provides that a "State plan for medical assistance must…provide…for making medical assistance available." The second statute, §1396d(a)(4)(B), defines the term "medical assistance" as

> [P]ayment of part or all of the cost of the following care and services or the care and services themselves, or both…to individuals…not receiving aid or assistance under any plan of the State…whose income and resources are insufficient to meet all of such cost…early and periodic screening, diagnostic, and treatment services…for individuals who are eligible under the plan and are under the age of 21.

42 U.S.C. §1396d(a)(4)(B). The third statute, 1396a(a)(43)(C), requires a state to "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services." Plaintiffs

contend that Defendants have violated these statutes by failing to provide the services mandated therein.

Count II of the complaint alleges that Defendants have failed to provide these services to Plaintiffs "with 'reasonable promptness,' in violation of 42 U.S.C. §1396a(a)(8)." ECF No. 1 at 53. §1396a(a)(8) requires a state to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."

Defendants argue that both Counts I and II are untenable because "the Department is not required to provide services to Plaintiffs; it is simply required to assure that Medicaid funds are available for covered services." ECF No. 17 at 8. They rely upon the Sixth Circuit 2006 decision *Westside Mothers* which held that the term "medical assistance" in §1396a(a)(8) and §1396a(a)(10) does not require a state to provide services. It only requires the state to provide financial assistance for services.

> Plaintiffs nevertheless contend that the language of §§1396a(a)(8), 1396a(a)(10) expands the definition of "medical assistance" beyond simply payment for services to include actual provision of services. After examining the text and the structure of the statute, we do not believe §§1396a(a)(8), 1396a(a)(10) require the State to provide medical services directly. The most reasonable interpretation of §1396a(a)(8) is that all eligible individuals should have the opportunity to apply for medical assistance, i.e., financial assistance, and that such medical assistance, i.e., financial assistance, shall be provided to the individual with reasonable promptness. The most reasonable interpretation of §1396a(a)(10) is that medical assistance, i.e., financial assistance, must be provided for at least the care and services listed in paragraphs (1) through (5), (17) and (21) of § 1396d(a). The regulations that implement these provisions also indicate that what is required is a prompt determination of eligibility and a prompt payment to eligible individuals to enable them to obtain the necessary medical services.

*Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2016) (citations omitted). Defendants contend that they are complying with §§1396a(a)(8) and 1396a(a)(10) because they have hired PIHPs to provide the necessary medical services to Plaintiffs. ECF No. 17 at 12.

Plaintiffs respond that Congress overruled *Westside Mothers* in 2010 when it amended the definition of the term "medical assistance" in the Medicaid Act. Prior to the amendment, the statute defined "medical assistance" as "payment of part or all of the cost of the [enumerated] services" to eligible individuals. *Westside Mothers*, 454 F.3d at 540. The statute now defines "medical assistance" as "payment of part or all of the cost of the following care and services or the care and services themselves, or both." 42 U.S.C.A. §1396d(a). Plaintiffs cite to the associated House Committee Report to contend that Congress amended the definition to require states to provide these services rather than only paying for them. ECF No. 20 at 9.

To the contrary, the amended definition does not impact the holding in *Westside Mothers* nor does it require reference to the statute's legislative history. Soon after Congress amended the definition, the Sixth Circuit in *John B. v. Goetz* reaffirmed its prior holding in *Westside Mothers*. *John B. v. Goetz*, 626 F.3d 356, 360 (6th Cir. 2010) (holding that under §1396a(a)(10) and §1396a(a)(8) "a state's obligation is only to pay for services actually rendered, not ensure the reasonably prompt provision of services.") (reaffirming the district court's conclusion that plaintiff had failed to state a claim upon which relief could be granted). The court addressed Congress's amendment to the definition of "medical assistance" when it explained that "[t]he definition of 'medical assistance' has changed since we decided *Westside Mothers II*, but the new definition does not affect this holding because a state may still fulfill its Medicaid obligations by paying for services." *Id.* at n. 2. As referenced by the court, the current definition of "medical services" gives a state three different options: provide services directly, pay for services, or both provide and pay for services. As such, the 2010 amendment to the definition does not disturb the holding in *Westside Mothers*. Contrary to Plaintiffs argument, a state may choose to only pay for services.

**1.**

Plaintiffs' claim alleging that Defendants violated 42 U.S.C. §1396a(10)(A) is without merit because Plaintiffs only claim that Defendants have failed to provide them with services. Failure alone to provide services is inadequate grounds to find a violation of §1396a(10)(A). Both failure to provide services and a failure to finance services are necessary to find a violation of §1396a(10)(A) since the definition of "medical services" permits a state to engage in either. Plaintiffs do not contend that Defendants have failed to provide financing for services. Thus, Plaintiffs' claim that Defendants violated 42 U.S.C. §1396a(a)(10) will be dismissed.

**2.**

Plaintiffs' claim that Defendants have violated 42 U.S.C. §1396a(a)(8) is also untenable for similar reasons. As explained above, under §1396a(a)(8), a state may either pay for services or furnish services directly. Section 1396a(a)(8)'s language requiring that such assistance "be furnished with reasonable promptness to all eligible individuals," has been explained by the Sixth Circuit to require the State to determine eligibility and provide payment for services with reasonable promptness. It does not require the State to provide the particular services with reasonable promptness. *Westside Mothers*, 454 F.3d at 540 ("[W]hat is required is a prompt determination of eligibility and a prompt payment to eligible individuals to enable them to obtain the necessary medical services."); *John B.* 626 F.3d at 360 ("[A] state's obligation is only to pay for services actually rendered, not ensure the reasonably prompt provision of services.") Plaintiffs do not allege that Defendants' violated §1369a(a)(8) by failing to promptly determine Plaintiffs' eligibility for payment of services. Rather, they allege that Defendants failed "to provide intensive home and community-based mental health services to the Plaintiffs with 'reasonable promptness.'" ECF No. 1 at 53. Accordingly, Count II of Plaintiffs' complaint will be dismissed for failure to state a claim.

**3.**

As explained above, the Sixth Circuit in *Westside Mothers* resolved the issue of a state's

obligation to provide or pay for services under 42 U.S.C. §§1396a(a)(8) and 1396a(a)(10).

However, the court did not resolve the question regarding a state's obligations under 42 U.S.C.

§1396a(a)(43)(C). *John B. v. Goetz*, 626 F.3d 356, 363 (6th Cir. 2010) ("One open question is the

extent to which *Westside Mothers II*'s holding that a state's obligation under §§1396a(a)(8) and

(10) is only to pay for medical assistance may be applicable to the provisions of § 1396a(a)(43)

not addressed in *Westside Mothers II*."). The statute provides:

> A State plan for medical assistance must…arrang[e] for (directly or through referral
> to appropriate agencies, organizations, or individuals) corrective treatment the need
> for which is disclosed by such child health screening services.

42 U.S.C. §1396a(a)(43)(C).

The Sixth Circuit in *John B.* directed the district court to decide the issue on remand and

the district court determined the following:

> The Sixth Circuit was silent as to the effect of the definitional change on Section
> (43). This Court finds that where, as in § 1396a(a)(43)(B) and (C), the language of
> a provision clearly requires that the state "provide or arrange for the provision" of
> screening services and corrective treatment, that language cannot reasonably be
> construed to mean only payment for services, particularly in light of the amended
> definition of "medical assistance." Even if that were not the case, the holding in
> *Westside Mothers II* would affect only the scope of a state's obligations under
> subsections (43)(B) and (C) — it would not render them unenforceable through §
> 1983.
>
> And, to be clear, these provisions do not require the State to become a "direct
> medical provider," as the State asserts. Rather, these provisions require the State to
> ensure that Medicaid-eligible children receive "screening services" and "corrective
> treatment" under certain circumstances. To satisfy its obligations, the State may
> either provide services directly or hire others to do so.

*John B. v. Emkes*, 852 F.Supp.2d 944, 951–952 (M.D. Tenn. 2012).

But the language of §1396a(a)(43)(C) requires the State to do more than just hire a provider

and write a check. As the statute provides, the state must "arrang[e] for…corrective treatment."

42 U.S.C. §1396a(a)(43)(C). It may do this "directly or through referral to appropriate agencies, organization, or individuals," but it must do more than just make a payment and consider its obligation fulfilled. *Id.* It must ensure that it "either provide[s] services directly or hire[s] others to do so." *John B.* 852 F. Supp.2d at 952. The Department elected not to provide the services, but it did contract for PIHPS to provide the services.

Accordingly, the remaining question is whether Plaintiffs have adequately pled that Defendants failed to arrange the services required by the statute. Defendants contend that they arranged for these services because they contracted with PIHPs to provide the services. However, Defendants did not eliminate their obligations under §1396a(a)(43)(C) solely by hiring PIHPs to provide the services. Their obligation to "arrang[e] for...corrective treatment" still exists. The State may contract with other organizations to provide the treatment, but this does not absolve the State of its obligation to ensure that adequate corrective treatment required by statute and presumably the contract with the provider is in fact provided. *Katie A. v. Los Angeles Co.*, 481 F.3d 1150, 1159 (9th Cir. 2007) ("Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state.").

Plaintiffs have sufficiently presented a claim that though the Department may have arranged for eligible individuals to receive services through PIHPs, the PIHPs are not providing these services. Defendants cannot avoid accountability by claiming that their obligations are fulfilled solely because they contracted for PIHPs to provide the services if the PIHPs are in fact not doing so. Defendants are responsible for ensuring that eligible individuals are receiving services, regardless of the actions of the PIHPs.

**B.**

The third and fourth counts of Plaintiffs' complaint allege that Defendants are violating Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Plaintiffs claim that Defendants' failure to arrange for corrective treatment have placed Plaintiffs at a higher risk of institutionalization. ECF No. 1 at 54–56. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The Rehabilitation Act similarly requires that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794(a).

Defendants acknowledge that "[c]laims brought under the ADA, Title II, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§7010 *et seq.* are often analyzed together in the same fashion since they both entail similar elements." ECF No. 17 at 18; *see S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–453 (6th Cir. 2008). The Rehabilitation Act includes the additional element that the program in question be the recipient of federal funds. *See Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1074 (E.D. Mich. 2015). Defendants do not contest that the Department receives federal funding through the Medicaid program. As such, Plaintiffs' claims under the ADA and Rehabilitation Act will be analyzed together.

In their motion to dismiss, Defendants argue that Plaintiffs cannot establish the necessary elements of a claim under the ADA or the Rehabilitation Act because they require an individual to demonstrate that they (1) are disabled; (2) are otherwise qualified; and (3) were excluded from participation in, denied benefits of, or subjected to discrimination under a program because of their

disability. ECF No. 17 at 15–16. Defendants contend that Plaintiffs cannot meet the third element because Plaintiffs do not claim that they were denied services due to their disabilities. "Plaintiffs must show that Defendants 'took action because of [Plaintiffs'] disability, i.e., the [p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken [by Defendants].'" *Id.* at 16 (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)). Defendants argue that Plaintiffs "cannot show that any PIHP budget was shortchanged due to Plaintiffs' disabilities. Similarly, they cannot show that the Department's allegedly less-than-100%-effective enforcement of its PIHP contracts was due to Plaintiffs' disabilities." *Id.*

In their response, Plaintiffs argue that Defendants have erroneously characterized their claim as one of disparate treatment. *See* ECF No. 20 at 15. Instead, they are bringing their claim under the integration mandate as presented by the Supreme Court in *Olmstead v. L.C. ex rel. Zimring*. The Court stated that the "unjustified institutional isolation of persons with disabilities" is, in and of itself, a prohibited "form of discrimination." *Olmstead v. ex rel. Zimring*, 119 S.Ct. 2176, 2190 (1999). The Court explained that the "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* at 2187. It further explained that "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 2187.

Under the integration mandate, a plaintiff must demonstrate that (1) "the State's treatment professionals determine that such placement is appropriate," (2) "the affected persons do not oppose such treatment," and (3) "the placement can be reasonably accommodated." *Olmstead v. Zimring*, 119 S.Ct. 2176, 2190 (1999). Defendants argue that Plaintiffs have not pled a claim under

*Olmstead* because "Plaintiffs fail to allege how the Department's actions have kept them from living in an integrated setting." ECF No. 17 at 17. However, Plaintiffs are alleging that Defendants' failures and inaction have placed them at risk of institutionalization. Plaintiffs posit that but for Defendants' failures and inaction, Plaintiffs would not now be in institutions or at risk of institutionalization. *See* ECF No. 20 at 17.

Defendants respond that "this risk is speculative (such that his or her claim is not ripe for adjudication) and specific to the individual." ECF No. 17 at 17. However, the Department of Justice has stated that the integration mandate extends to individuals who are at risk of institutionalization.

> [T]he ADA and the *Olmstead* decision extend to persons at serious risk of institutionalization or segregation and are not limited to individuals currently in institutional or other segregated settings. Individuals need not wait until the harm of institutionalization or segregation occurs or is imminent. For example, a plaintiff could show sufficient risk of institutionalization to make out an Olmstead violation if a public entity's failure to provide community services or its cut to such services will likely cause a decline in health, safety, or welfare that would lead to the individual's eventual placement in an institution.

U.S. Dep't of Justice, Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.*, Q. 6 (last updated June 22, 2011), available at www.ada.gov/olmstead/q&a_olmstead.htm.[1] Various courts of appeals have held that the risk of institutionalization is sufficient to bring a claim under the mandate provision. *See Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (holding that an integration claim under the ADA is also valid under the Rehabilitation Act); *M.R. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2012); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004).

---

[1] The integration mandate is "a creature of the [DOJ's] own regulations." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). As such, its interpretation of the provision is "controlling unless plainly erroneous or inconsistent with the regulation." *Id.* Furthermore, the Supreme Court found that "[b]ecause the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect." *Olmstead*, 527 U.S. at 597–98 (citation omitted).

Accordingly, Plaintiffs are not required to assert that Defendants discriminated against them based on their disability. Instead, Plaintiffs may bring a claim as they have done so here, alleging that Defendants' actions and inaction have contributed to their risk of requiring institutionalization.

Defendants briefly attempt to distinguish the Rehabilitation Act from the ADA by arguing that Plaintiffs must "show that the alleged wrongful conduct was solely based on disabilities, because a mixed motive is insufficient to establish a claim under the Rehabilitation Act." ECF No. 17 at 18 (citing *Rumburg v. Sec'y of the Army*, 2011 U.S. Dist. LEXIS 45240 (E.D. Mich. 2011)). However, the plaintiff in *Rumburg* brought his Rehabilitation Act claim in the context of an employment discrimination case, not as an integration claim as Plaintiffs have done here. *Id.* Defendants have not presented adequate authority or analysis for dismissal of Plaintiffs' claim on this basis. They have not demonstrated that a mixed motive is insufficient to establish an integration claim under the Rehabilitation Act. Furthermore, Defendants have not provided evidence that if Plaintiffs' discrimination claims are valid, that Defendants had a mixed motive for their actions. As such, Plaintiffs' claims will not be dismissed.

## C.

Plaintiffs' fifth and sixth counts allege that Defendants have violated their due process rights under the Medicaid Act and the 14th Amendment by "fail[ing] to establish and maintain customs, policies, and practices to provide Plaintiffs and members of the Plaintiff Class with adequate written notice of reductions, terminations, and denials of Medicaid funded intensive home and community-based mental health services and their rights to a pre-termination or reduction fair hearing." ECF No. 1 at 57. The fifth count is brought pursuant to 42 U.S.C. §1396a(a)(3) and the sixth count is brought pursuant to the U.S. Constitution. Since both counts

are for violation of due process and neither party distinguishes between the two, the analysis will be the same for both.

42 U.S.C. §1396a(a)(3) provides that a "State plan for medical assistance must -- provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." The federal regulation 42 C.F.R. §431.210 requires the State to give the individual notice of this opportunity for a hearing. The notice must contain:

> (a) A statement of what action the agency, skilled nursing facility, or nursing facility intends to take and the effective date of such action;
>
> (b) A clear statement of the specific reasons supporting the intended action;
>
> (c) The specific regulations that support, or the change in Federal or State law that requires, the action;
>
> (d) An explanation of—
>
>> (1) The individual's right to request a local evidentiary hearing if one is available, or a State agency hearing; or
>>
>> (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and
>
> (e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

42 C.F.R. §431.210. Plaintiffs' complaint does not allege that Defendants are not providing individuals with these hearings. Rather, the complaint contends that Defendants are not providing individuals *notice* of their right to a hearing when their benefits are to be reduced, terminated, or denied. ECF No. 1 at 57.

Defendants argue that Plaintiffs fail to state a claim because "Michigan's administrative hearings rules track the federal statutory requirements." ECF No. 17 at 19. Specifically, these Michigan rules require a hearing whenever an individual has been denied benefits, their benefits have been reduced, or they have not received a prompt response to their application for benefits.

*Id.* at 20. Defendants contend that because "Michigan's rules authorizing administrative hearings track the federal statutory requirement, Count V must be dismissed." *Id.* at 21. However, the fact that these rules exist does not alone mean that Defendants are complying with them. It is possible that Defendants are not complying with their due process obligations, despite having these Michigan rules in place. As such, this is not a valid basis for dismissal of Plaintiffs' complaint.

Defendants also argue that they are fulfilling their notice obligations because "Plaintiffs need not wait to request administrative hearings until they receive formal notices of reductions or suspensions of benefits. They can also pursue this avenue of relief when their requests for assistance are not promptly acted on, or when an agency has not taken his or her choice of service into account." *Id.* at 20. This argument sidesteps the issue by reasoning that regardless of whether Defendants provide adequate notice, Plaintiffs can receive a hearing. This does not address Plaintiffs' claim which alleges that Defendants are not providing adequate notice of individuals' rights to a hearing. Regardless of whether an individual is entitled to a hearing, the possibility remains that Defendants are not providing adequate notice of such a right. The requirement to furnish notice and the requirement to furnish a hearing are separate and distinct. They are related, but satisfying one does not automatically satisfy the other.

In their reply brief, Defendants attempt to absolve themselves of responsibility by arguing that

> [B]efore reaching a full administrative hearing, there are review mechanisms through the CMHs, to the PIHPs, each of which requires appropriate notices. Each such notice can and should be addressed by the agency that issued it. Unless that action and notice is brought to the Department through the appropriate channels, Plaintiffs cannot show that the Department violated the U.S. Constitution or federal law by failing to review each such action or notice individually.

ECF No. 21 at 6–7. This argument is akin to Defendants' arguments contending that their contracts with the PIHPs alone satisfied their obligations to arrange for services under the Medicaid Act.

*See* III.A.3. As discussed above, a contractual relationship with the PIHPs does not absolve Defendants of assuring or auditing to be sure that the requirements of the Medicaid Act are being met. *See id.* Here, Defendants represent that they have delegated some of their notice and hearing responsibilities to the CMHs and PIHPs. Delegation of these responsibilities is permissible, but it does not excuse the Department from its obligation to provide notice and a hearing. If notice is not given or is defective due to the CMH or a PIHP, the Department is still responsible because the obligation to the individual recipient ultimately lies with the Department. Defendants have not demonstrated that the Medicaid Act or the Constitution remove the burden from them by virtue of delegating the responsibility to a CMH or a PIHP.

Plaintiffs have sufficiently asserted a violation of the notice requirement under the Medicaid Act and the Constitution. As such, they have adequately pled their complaint.

## IV.

Defendants make a brief argument that Plaintiffs' claims should be dismissed because the Eleventh Amendment prohibits recovery of retroactive relief from a state. ECF No. 17 at 21. However, Plaintiffs are seeking injunctive and declaratory relief, not retroactive relief. ECF No. 1 at 58–59. As such, their complaint will not be dismissed on this basis.

Defendants also contend that Plaintiffs' claims under 42 C.F.R. §435.930 fail to state a claim because they do not provide a cause of action. 42 C.F.R. §435.930 provides:

The agency must—

(a) Furnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures;

(b) Continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible; and

(c) Make arrangements to assist applicants and beneficiaries to get emergency medical care whenever needed, 24 hours a day and 7 days a week.

42 C.F.R. §435.930. Plaintiffs cite to this regulation twice in their complaint. Defendants contend that "Plaintiffs lean heavily on a Medicaid regulation that they allege requires the Department to have methods of keeping itself informed of local agency adherence to the State Plan and to take corrective action to ensure that adherence. But the statutes themselves do not require a state to take corrective action nor do they describe the parameters of such an action." ECF No. 17 at 12. (citations omitted).

In their response, Plaintiffs argue that they "are not seeking to enforce this provision as a cause of action, but instead note Defendants' failure to comply with 42 C.F.R. §435.10." ECF No. 20 at 12. 42 C.F.R. §435.10 provides

A State plan must—

(a) Provide that the requirements of this part are met; and

(b) Specify the groups to whom Medicaid is provided, as specified in subparts B, C, and D of this part, and the conditions of eligibility for individuals in those groups.

42 C.F.R. §435.10. Plaintiffs explain that "Defendants' failure to comply with this and several other provisions has resulted in the Plaintiffs' injuries…under 42 U.S.C. §1396a(a)(10)(A), 42 U.S.C. §1396a(a)(8), and 42 U.S.C. § 1396a(a)(3)." ECF No. 20 at 13.

Presumably, Plaintiffs are not attempting to pursue a private cause of action under either of the federal regulations it has cited. Rather, they use Defendants' alleged violation of these regulations to bolster their claims against Defendants pursuant to the relevant provisions of the Medicaid Act (§§1396a(a)(10)(A), 1396a(a)(8), 1396a(a)(3)).

**V.**

Accordingly, it is **ORDERED** that Plaintiffs' amended motion for corrected judicial assignment, ECF No. 25, is **DENIED**.

It is further **ORDERED** that Defendants' motion to dismiss, ECF No. 17, is **GRANTED IN PART**.

It is further **ORDERED** that Plaintiffs' claim of Defendants' alleged violation of 42 U.S.C. 1396a(a)(10)(A) under Count I of Plaintiffs' complaint is **DISMISSED**.

It is further **ORDERED** that Count II of Plaintiffs' complaint is **DISMISSED**.

Dated: February 6, 2019                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge