## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**D.D.**, by his parent and Next Friend **B.N.**; **G.P.**, by her parent and Next Friend **A.P.**; **G.G.**, by his mother and Next Friend **M.G.**; **M.M.**, by his parent and Next Friend **C.C.**; **L.G.**, by her parent and Next Friend **T.G.**; **S.W.**, by his parent and Next Friend **C.W.**;    and **K.M.**, by his parent and guardian **L.M.**,

     Plaintiffs,

v.

**MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **ELIZABETH HERTEL**, Director of Michigan Department of Health and Human Services, in her official capacity,

     Defendants.

No. 18-cv-11795-TLL-PTM
Hon. Thomas L. Ludington
Mag. Patricia T. Morris

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND RELATED RELIEF**

---

**COUNSEL FOR THE CLASS**
Dave Honigman (P33146)
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com

**MANTESE HONIGMAN, PC**
David M. Honigman (P33146)
Gerard V. Mantese (P34424)
Theresamarie Mantese (P53275)
Attorneys for Plaintiffs
1361 E Big Beaver

**DISABILITY RIGHTS MICHIGAN**
Kyle M. Williams (P77227)
Nicholas A. Gable (P79069)
Attorneys for Plaintiffs
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org
ngable@drmich.org

Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com
gmantese@manteselaw.com
tmantese@manteselaw.com

**NATIONAL HEALTH LAW PROGRAM**
Kimberly Lewis (CA – 144879)
lewis@healthlaw.org
Attorney for Plaintiffs
3701 Wilshire Blvd., Ste. 750
Los Angeles, CA 90010
(919) 968-6308

**JOHN J. CONWAY PC**
John J. Conway (P56659)
Attorney for Plaintiffs 2622
Woodward Ave. Ste. 225
Royal Oak, MI 48067
(313) 961-6525
jj@jjconwaylaw.com

Stephanie M. Service (P73305)
Mark Donnelly (P39281)
**MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL**
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-8703
ServiceS3@michigan.gov
Donnellym@michigan.gov

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND RELATED RELIEF

Plaintiffs, by counsel and on consent of the Defendants as to the relief sought, hereby move this Court for an order preliminarily approving the Settlement Agreement attached hereto as Ex. 1, setting a Fairness Hearing date and schedule as

set forth in the proposed Order attached hereto as Ex. 2, and approving the proposed

Class Notice and Distribution Plan attached hereto as Exs. 3 and 4.

Dated: January 17, 2025

Respectfully submitted,

---

**/s/** Dave Honigman
**COUNSEL FOR THE CLASS**
Dave Honigman (P33146)
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com


**/s/** Gerard V. Mantese
**MANTESE HONIGMAN, PC**
Dave Honigman (P33146)
Gerard V. Mantese (P34424)
Theresamarie Mantese (P53275)
Emily S. Fields (P82047)
Attorneys for Plaintiffs
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com
gmantese@manteselaw.com
tmantese@manteselaw.com
efields@manteselaw.com

**/s/** Kyle Williams
**DISABILITY RIGHTS MICHIGAN**
Kyle M. Williams (P77227)
Nicholas A. Gable (P79069)
Attorneys for Plaintiffs
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org
ngable@drmich.org

**/s/** John Conway
**JOHN J. CONWAY PC**
John J. Conway, III (P56659)
Attorney for Plaintiffs
Woodward Ave. Ste. 225
Royal Oak, MI 48067
(313) 961-6525
jj@jjconwaylaw.com

**/s/** Kimberly Lewis
**NATIONAL HEALTH LAW PROGRAM**
Kimberly Lewis (CA – 144879)
3701 Wilshire Blvd., Ste. 750
Los Angeles, CA 90010
(919) 968-6308
lewis@healthlaw.org

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

**D.D.**, by his parent and Next Friend **B.N.**; **G.P.**, by her parent and Next Friend **A.P.**; **G.G.**, by his mother and Next Friend **M.G.**; **M.M.**, by his parent and Next Friend **C.C.**; **L.G.**, by her parent and Next Friend **T.G.**; **S.W.**, by his parent and Next Friend **C.W.**;   and **K.M.**, by his parent and guardian **L.M.**,

     Plaintiffs,

v.

**MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **ELIZABETH HERTEL**, Director of Michigan Department of Health and Human Services, in her official capacity,

     Defendants.

No. 18-cv-11795-TLL-PTM
Hon. Thomas L. Ludington
Mag. Patricia T. Morris

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND RELATED RELIEF**

---

**COUNSEL FOR THE CLASS**
Dave Honigman (P33146)
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com

**MANTESE HONIGMAN, PC**
David M. Honigman (P33146)
Gerard V. Mantese (P34424)
Theresamarie Mantese (P53275)
Attorneys for Plaintiffs
1361 E Big Beaver

**DISABILITY RIGHTS MICHIGAN**
Kyle M. Williams (P77227)
Nicholas A. Gable (P79069)
Attorneys for Plaintiffs
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org
ngable@drmich.org

Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com
gmantese@manteselaw.com
tmantese@manteselaw.com

**NATIONAL HEALTH LAW PROGRAM**          **JOHN J. CONWAY PC**
Kimberly Lewis (CA – 144879)          John J. Conway (P56659)
lewis@healthlaw.org          Attorney for Plaintiffs 2622
Attorney for Plaintiffs          Woodward Ave. Ste. 225
3701 Wilshire Blvd., Ste. 750          Royal Oak, MI 48067
Los Angeles, CA 90010          (313) 961-6525
(919) 968-6308          jj@jjconwaylaw.com

Stephanie M. Service (P73305)
Mark Donnelly (P39281)
**MICHIGAN DEPARTMENT OF**
**ATTORNEY GENERAL**
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-8703
ServiceS3@michigan.gov
Donnellym@michigan.gov

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND RELATED RELIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND.................................................................3

   A.  Procedural History .............................................................................3

      1.   The Litigation ...............................................................................3

      2.   Settlement Negotiations ...............................................................4

   B.  The Settlement ...................................................................................5

      1.   Purpose .........................................................................................5

      2.   Goals.............................................................................................6

      3.   Commitments ...............................................................................7

      4.   Exit Criteria .................................................................................9

      5.   Modifications and Contingencies...............................................14

      6.   Other Terms ...............................................................................15

      7.   Notice .........................................................................................16

   C.  Attorney Fees and Costs...................................................................16

III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...17

   A.  There are No Grounds to Doubt the Fairness of the Agreement...................19

   B.  The Agreement is Otherwise Fair, Reasonable, and Adequate......................19

IV.    THE PROPOSED NOTICE AND NOTICE PLAN ARE
       REASONABLE ....................................................................................22

V.     CONCLUSION ....................................................................................23

## INDEX OF AUTHORITIES

**Cases**

*Bobbitt v. Academy of Court Reporting, Inc.*, 2009 WL 2168833 (E.D. Mich. July 21, 2009).............................................................................................................17

*D.D. v. MDHHS*, 2022 WL 16680727 (E.D. Mich. Nov. 3, 2022) ........................20

*Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019). ......................23

*International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)...........................................................................................................................18

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (2006)........................... 21, 22

*Moeller v. Week Publications, Inc.*, 2023 WL 119648 (E.D. Mich. Jan. 6, 2023) ....................................................................................................................... passim

**Rules**

Fed.R.Civ. P. 23(e)............................................................................................ 17, 19

Fed.R.Civ. P. 23(e)(1)(B) ........................................................................................22

Fed.R.Civ.P 23(h) ....................................................................................................17

**Treatises**

Manual for Complex Litig. §§ 21.632-34 (4th ed. 2004) ........................................17

## CONCISE STATEMENT OF ISSUE PRESENTED

Should the Court enter the parties' proposed Order granting preliminary approval of the Settlement Agreement, directing notice to class members, and setting a schedule for the final fairness hearing?

Plaintiffs and Defendants say:          Yes.

## CONTROLLING OR MOST APPROPRIATE
## <u>AUTHORITY FOR THE RELIEF REQUESTED</u>

1. Fed. R. Civ. P. 23(e)

2. *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

3. *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019)

## I.     INTRODUCTION

Plaintiffs brought this lawsuit (the "Action") on June 6, 2018 (Case No. 18-cv-11795-TLL-PTM).[1] The Action was brought as a class action seeking injunctive and declaratory relief against the Michigan Department of Health and Human Services ("MDHHS"), its director, and Michigan's then-Governor Snyder. The Action alleged violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Medicaid Act, and the Due Process Clause of the federal constitution. Plaintiffs and the class sought, among other relief, to compel the provision of certain intensive Medicaid services to children, services that Plaintiffs alleged were necessary to avoid "psychiatric hospitalizations or commitment to the juvenile delinquency system and permanent damage to [the children's] lives." Amend. Compl. ¶ 3 (ECF#71).

After over four years of intensive, arm's length negotiations, the parties have reached a Settlement Agreement ("the Agreement") which, if approved by this Court, will provide substantial benefits to Medicaid-eligible children with mental health needs throughout Michigan. The Agreement, attached hereto as Ex. 1, provides the class the primary relief sought in this litigation: access to intensive mental health services that will keep class members living safely in their homes and

---

[1] The case was originally filed as *K.B., et al. v. Michigan Department of Health and Human Services, et al.*, but the named plaintiff K.B. is no longer a plaintiff.

communities.

We believe the Agreement far exceeds the preliminary approval threshold, which requires a showing that the Court, after notice to the class and a hearing on final approval during which objections (if any) may be heard, is likely to conclude the Agreement is "fair, reasonable, and adequate" and therefore grant final approval of the Agreement. Fed. R. Civ. P. 23(e)(1)(B). First, the Agreement provides exceptional benefits for the class and the public. Second, the Agreement is the product of informed, arm's length negotiations conducted over the course of several years by counsel experienced in these types of lawsuits, and there are no grounds to doubt the fairness of the Agreement. Third, the Agreement provides the class with more expedient and comprehensive reforms than would be available through continued litigation. Finally, the named Plaintiffs support approval of the Agreement, and experienced class counsel believe approval of the Agreement to be preferable to continued litigation.

Accordingly, Plaintiffs respectfully request that the Court enter the proposed Order attached hereto as Ex. 2, which (1) preliminarily approves the proposed Agreement, (2) approves the proposed Notice (Ex. 3), (3) directs that notice to the class be given in the time and manner described in the Distribution Plan (Ex. 4), and (4) sets a schedule for the final fairness hearing to determine final approval of the Agreement and the reasonableness of Plaintiffs' attorney fees and costs.

2

## II.      FACTUAL BACKGROUND

### A.    Procedural History

#### 1.  The Litigation

The Plaintiffs in this Action are children with significant mental, emotional, and behavioral health needs who require intensive home and community-based services to correct or ameliorate their emotional, behavioral, or psychiatric condition. Amend. Compl. ¶¶ 12-15 (ECF#71). The Defendants are MDHHS and its current director, Elizabeth Hertel, who is sued in her official capacity.[2] Plaintiffs allege that Defendants have failed to provide medically necessary home and community-based services, thereby putting Plaintiffs at risk of institutionalization. *Id*. Plaintiffs brought claims for injunctive and declaratory relief pursuant to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Medicaid Act, and the Due Process Clause of the federal constitution. *Id*. at ¶¶ 8-10.

The Defendants filed a motion to dismiss, which the Court granted in part and denied in part on February 6, 2019 (ECF#29). The parties subsequently engaged in written discovery and began settlement discussions. Negotiations culminated in an Interim Agreement filed with the Court on August 11, 2020 (ECF#50).

---

[2] Pursuant to Fed. R. Civ. P. 25(d), Director Hertel was automatically substituted for her predecessors, Directors Nick Lyon and Robert Gordon. The Governor of Michigan, previously named in his official capacity, was dismissed as a party by stipulation (ECF#59).

The parties stipulated to amend the Complaint on February 13, 2022 (ECF#70), adding certain named Plaintiffs and removing certain formerly named Plaintiffs. The case was recaptioned *D.D., et al. v. Michigan Department of Health and Human Services, et al*. Shortly thereafter, Plaintiffs moved for class certification.[3] Defendants did not object, and the Court granted Plaintiffs' motion on November 3, 2022, certifying a class defined as:

> All Medicaid-eligible beneficiaries under the age of 21 in the State of Michigan for whom a licensed practitioner of the healing arts acting within the scope of practice under state law has determined, through an assessment, that intensive [HCBS] are needed to correct or ameliorate their emotional, behavioral, or psychiatric condition.

Throughout these proceedings, the parties continued to negotiate a final agreement while stipulating to extend the Interim Agreement.

### 2. Settlement Negotiations

The Interim Agreement (ECF#50) was the product of over a year of intensive negotiations. Its purpose was "to establish a process for Plaintiffs and Defendants . . . to negotiate a settlement of the above-named lawsuit, to enable the State of Michigan to improve its delivery of behavioral health services and supports to EPSDT-eligible children with mental or behavioral disorders, including children with a Developmental Disability, and to ensure that these EPSDT beneficiaries

---

[3] Plaintiffs moved for class certification on April 8, 2022 and amended their motion on April 11, 2022.

receive all of the 'medically necessary' supports and services as described by federal law" (ECF#50 PageID1070). The Interim Agreement set forth certain "goals"; and the Defendants committed, among other things, to "develop an implementation plan detailing a comprehensive intensive service array/package (MICAS) that will be individualized to each child . . . and that will be available to children timely and in the amount, scope, and duration necessary to meet the individual needs of eligible children and their families" (*id*. at PageID1077).

The Interim Agreement, although a significant achievement, was only a step toward resolution. Accordingly, Plaintiffs and Defendants continued to negotiate a final agreement, meeting at least monthly and often bi-weekly (Ex. 5, Williams Declaration ¶ 19).

## B.    The Settlement

The final Agreement sets forth a number of Goals, which inform various Commitments that the Defendants have made. The Goals and Commitments, in turn, guide a series of Exit Criteria by which Defendants' compliance with the Agreement will be gauged.

### 1.  Purpose

The primary purpose of the Agreement is to define and make available a comprehensive intensive home and community-based Medicaid service array (hereinafter referred to as "Michigan Intensive Child and Adolescent Services" or

"MICAS" and described in Appendix A to the Agreement). In furtherance of that purpose, the Agreement puts in place systems and procedures designed to identify, screen, and assess class members' eligibility for those services. The Agreement also establishes systems to ensure the timely provision of services and minimize out of home placements, and it creates quality management tools and measures designed to improve quality of care and increase transparency. Among other things, the Defendants commit to educating class members, providers, and the public on the availability of the MICAS array; on mediation, complaint, grievance, and appeals rights and processes pursuant to federal law, including any updates to the same; and on recipient rights under the Michigan Mental Health Code. Defendants have also committed to measures designed to ensure the protection of class members' due process rights.

**2.  Goals**

The Agreement's Goals are as follows:

a.      Identify the MICAS array;

b.      Identify the class members to be served;

c.      Establish a consistent statewide screening, assessment, and referral procedure that will facilitate class members' access to medically necessary MICAS services;

d.     Establish the foundation for the timely, statewide provision of medically necessary MICAS services to class members to minimize out of home placements; and

e.     Identify and develop quality management tools and measures designed to monitor and improve quality of care and to provide transparency to families, children, providers, advocacy organizations, and other stakeholders with interest in the provision of MICAS services.

### 3. Commitments

The Defendants have committed to:

- Expand and maintain a comprehensive Medicaid-covered service array and provide timely access to medically necessary intensive behavioral health services for the class members. The services array is set forth in the Agreement and defined in Appendix A, and includes Intensive Crisis Stabilization Services for children, Intensive Home-Based Services, Intensive Care Coordination with Wraparound, Respite Care, Parent Support Partner, and Youth Peer Support.

- Develop awareness and communication tools to educate beneficiaries and the public about the services array and how to access those services; about mediation, complaint, grievance, and appeals rights and processes pursuant to federal law; and about recipient rights.

- Implement a standardized, statewide functional behavioral health tool to assist in the determination of eligibility for the MICAS array and to operate as a decision support tool for providers to determine individualized services and intensity of care coordination for class members.

- Review and update access standards for the use of the above health tool and provision of medically necessary services; establish medical necessity criteria for the services array; and use statewide data to determine the needs of the class and build toward statewide capacity to provide the services.

- Take certain steps to develop workforce capacity to ensure that medically necessary services are provided.

- Collect, review, use, and report data reported concerning the provision of services included in the services array.

- Establish and implement a monitoring structure related to Defendants' oversight of its managed care agents, and create an advisory board to advise Defendants on implementation of the Agreement.

- Review and revise managed care contracts to require managed care entities to monitor, and collect and maintain data on, grievances, appeals, and denials for services within the MICAS array; monitor managed care entities' compliance and address concerns when they are identified; and revise, as necessary,

processes and managed care contracts to strengthen grievance, appeals, and recipient rights processes.

- Develop an Implementation Plan within 12 months of execution of this Agreement demonstrating how Defendants can substantially comply with the Exit Criteria in this Agreement.

### 4. Exit Criteria

The Defendants' compliance with its commitments is measured by the Agreement's Exit Criteria, with which Defendants' must "substantially comply" as defined in Section 3.1 of the Agreement. The Parties anticipate that Defendants will complete implementation of the Agreement around December 31, 2029. The Exit Criteria require that Defendants:

***The Services Array***

- Must have established measurable targets for access to the services array, be monitoring and comparing utilization to those targets, and have revised or developed as necessary state regulatory or policy language and rates to provide for adequate access to the services.

- Must have reviewed and/or revised managed care contracts as necessary to provide the services array consistent with network adequacy and access standards.

9

- Must have established intensive crisis stabilization service guidelines and a program to provide such services in the home or community after initial crisis.

- Must have expanded the availability of Intensive Home-Based Services and Intensive Care Coordination with Wraparound to meet the needs of class members who meet medical necessity, and have revised its current wraparound practice model as necessary to align with best practices.

*Beneficiary Information and Education*

- Must have developed and distributed specific resources on: (1) the service array and how to access the same; (2) mediation, complaint, grievance, and appeals rights and processes pursuant to federal law, including any updates to the same; and (3) recipient rights under chapter 7 of PA 258 of 1974.

- Must have developed a public-facing website to provide information regarding MICAS services; and must have updated template beneficiary handbooks for managed care plans to utilize and distribute as required under federal Medicaid regulations, that include all the MICAS services, eligibility for the services, and how to access them.

*Eligibility and Access to Behavioral Health Services*

10

- Must have implemented a standardized, statewide functional behavioral health tool used to determine eligibility for the services array and assist with determinations of the intensity of need for a service.

- Must have developed a policy and process requiring class members to be assessed using a standardized tool.

- Must have developed, or contracted with an appropriate entity to develop, a standardized tool and corresponding manual(s).

- Must have identified, trained, and certified a statewide network of assessors or contracted with an appropriate entity to identify, train, and certify a statewide network of assessors on the purpose and use of the standardized tool.

- Must have oriented key stakeholders, including families and youth, to the purpose and use of the standardized tool and process.

- Must have implemented the standardized tool and process statewide to support the provision of MICAS services as medically necessary.

- Must have established eligibility criteria for the MICAS service array to be provided to class members based upon medical necessity criteria and incorporated such criteria into managed care contracts.

- Must have demonstrated the capacity to provide medically necessary MICAS services to class members.

11

*Workforce Development and Training*

- Must have established a capacity building structure as delineated in the Agreement.

- Must have created a MICAS workforce development plan as delineated in the Agreement.

- Must have established dedicated personnel within MDHHS that will help serve the behavioral health needs of class members, which the Parties agree MDHHS has already substantially complied with.

- Must have implemented a medical education debt repayment program that focuses on incentivizing children's behavioral health care providers to practice in Michigan, which the Parties agree MDHHS has already substantially complied with.

- Must have reviewed/revised/developed criteria to maximize the use of teams that use a licensed clinician working with paraprofessionals, as allowed by law.

- Must have consulted with children's behavioral health experts to identify opportunities to expand and strengthen the MICAS workforce.

*Data Collection and Reporting*

- Must have dedicated personnel to monitor data and assess quality improvement as delineated in the Agreement.

12

- Must have established and be tracking the indicators for the MICAS service array for class members as delineated in the Agreement.

- Must have revised managed care contract language for data collection and reporting on the MICAS array and selected measures or indicators, as needed or when appropriate.

- Must have created a dashboard to make quarterly and annual user-friendly data available to the public regarding the provision of the MICAS array as delineated in the Agreement.

**State Oversight and Monitoring**

- Must have created a clinical support team to help serve as a statewide resource to managed care entities and children's behavioral health providers, which the Parties agree MDHHS has substantially complied with.

- Must have updated its existing statewide Comprehensive Quality Strategy for managed care entities regarding access utilization of MICAS services.

- Must have reviewed and revised as necessary managed care contract language for compliance with obligations under this Agreement

- Must have required managed care entities to report on selected measures or indicators at regular, specific intervals.

13

- Must have established the Advisory Body referenced in Section 6.1(6) of the Agreement.

### Due Process

- Must have reviewed current processes and made any revisions, as necessary, to strengthen grievance, appeals, and recipient rights processes, in compliance with federal law.

- Must have made modifications to contracts necessary to establish the due process protocols delineated in the Agreement.

- Must have made publicly available to class members their due process rights as delineated in the Agreement.

- Must have in place a process to monitor and address the managed care entities' compliance with the due process protocols.

### Implementation Plan

- Must have developed an implementation plan as delineated in the Agreement.

## 5. Modifications and Contingencies

The Agreement may be modified in limited circumstances (Section 9), and it is subject to the following contingencies:

- The Court entering an order approving the terms of the Agreement and retaining jurisdiction to enforce or modify the terms of the Agreement.

14

- The Michigan Legislature appropriating sufficient ongoing funding to MDHHS to allow Defendants to meet the terms of this Agreement.

- CMS approving any amendments to Medicaid waivers, demonstration authorities, or the state plan, if needed, to allow Defendants to meet the terms of the Agreement.

- CMS approving necessary managed care contract amendments to allow Defendants to meet the terms of the Agreement.

- CMS approving capitated rate adjustments necessary to allow Defendants to meet the terms of the Agreement.

- The MICAS services remaining eligible for Medicaid coverage.

If any contingency is not met, the Parties must make good faith efforts to modify the Agreement to maintain or gain judicial approval.

### 6. Other Terms

The Agreement includes a dispute resolution procedure (Section 11). Section 12, which addresses release and waiver, provides that "all of Plaintiffs' and Class members' claims for class-wide injunctive and declaratory relief against the Defendants which were, or could have been, asserted in the Complaint filed on June 6, 2018, or First Amended Complaint filed on February 13, 2022, shall merge into this Agreement upon the Court's final approval of the Agreement, and Plaintiffs and

Class members shall have no further recourse against Defendants in respect of such claims except pursuant to the terms hereof."

Significantly, the Agreement makes clear that "[n]othing herein shall preclude a Plaintiff or Class member from exercising their Medicaid fair hearing rights as otherwise allowed by law." Finally, the Agreement makes clear that nothing therein limits the ability of Disability Rights Michigan to fulfill its federal mandates" (Section 12.3).

### 7.  Notice

The proposed Notice and distribution list are attached hereto as Exhibits 3 and 4.

### C.    Attorney Fees and Costs

Defendants have agreed to pay $3.5 million dollars to Plaintiffs' counsel for attorney fees, costs, and expenses incurred in the litigation to date and through December 31, 2027. The negotiated fee amount represents an almost 40% reduction from the initial demand of $5.9 million for work performed and costs incurred through May 31, 2024, and it covers work to be performed over three years into the future.

The parties did not negotiate attorney fees until an agreement was reached on final settlement terms (Ex. 5 ¶ 21; Ex. 6, Honigman Declaration ¶ 22). After reaching an agreement on all settlement terms except the amount of fees, costs, and expenses

16

to be reimbursed by Defendants, fee negotiations began. From June 24, 2024 until October 18, 2024, the parties met multiple times and exchanged information. Plaintiffs' counsel provided billing records and declarations detailing the work performed by, and the experience of, Plaintiffs' counsel and Class counsel, as well as the expenses and costs incurred by each firm. The parties went through multiple rounds of negotiations before reaching an agreement (Ex. 5 ¶ 43; Ex. 6 ¶ 39).

Pursuant to Fed. R. Civ P 23(h), Plaintiffs will file a separate motion seeking court approval of the attorney fees and costs award described above. As set forth in the proposed Order (Ex. 2), Plaintiffs request that the Court set the hearing on the fee motion at the same time as the fairness hearing.

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Pursuant to Fed. R. Civ. P. 23(e), the parties must obtain court approval prior to settling the claims of a certified class. The approval process has three stages: (1) preliminary approval of the proposed settlement; (2) notice to class members of the proposed settlement; and (3) a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate, and thus should be approved. Manual for Complex Litig. §§ 21.632-34 (4th ed. 2004); *Bobbitt v. Academy of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833, at *1 (E.D. Mich. July 21, 2009).

To determine whether the settlement is fair, reasonable, and adequate, courts consider: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely

duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").

Fed. R. Civ. P. 23(e)(2) sets forth four additional approval factors: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate; and (4) whether the proposal treats class members equitably relative to each other.[4]

At the preliminary approval stage, however, the Court's inquiry is significantly more limited. The Agreement should be preliminarily approved if it "(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval at the final-approval stage." *Moeller v. Week Publications, Inc.*, 649 F.Supp.3d 530, 540-41 (E.D. Mich. 2023) (Ludington, J).

---

[4] The Sixth Circuit's factors were developed prior to the 2018 amendment to Fed. R. Civ. P. 23(e) that added the four factors in Rule 23(e)(2). The advisory committee made clear that the amendment did not displace any prior such factors, and so both sets of factors guide the analysis. *See Moeller*, 649 F.Supp.3d at 541, n. 1.

The primary consideration is whether the proposed agreement "is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Id*. Here, there are no grounds to doubt the fairness of the Agreement, and the Agreement is clearly within the range of possible approval.

## A.     There are No Grounds to Doubt the Fairness of the Agreement

Before beginning final settlement negotiations, the parties engaged in contested motion practice and months of written discovery. Plaintiffs' and Class counsel refused to negotiate attorney fees until a full merits settlement had been reached, and the parties negotiated the proposed Agreement at arm's length and over the course of multiple years. In the absence of any evidence of fraud or collusion between the parties, as here, the Court must presume the absence of such evidence. *Moeller*, 649 F.Supp.3d at 542. Furthermore, the Settlement Agreement (which provides only for injunctive relief) treats all Plaintiffs and class members exactly equally. As such, factors (B) and (D) of Fed. R. Civ. P. 23(e)(2) and the first *UAW* factor are satisfied.

## B.     The Agreement is Otherwise Fair, Reasonable, and Adequate

The remaining Rule 23 and *UAW* factors are also satisfied. Concerning the first Rule 23(e)(2) factor, which addresses the adequacy of the class's representation, this Court has already determined that Plaintiffs' counsel are qualified, experienced,

and otherwise adequate to conduct this litigation. *D.D. v. MDHHS*, 639 F.Supp.3d 750, 757 (E.D. Mich. 2022); *see Moeller*, 649 F.Supp.3d at 541 (noting the redundancy of the first Rule 23(e)(2) factor and the requirements of Rule 23(a)(4) and Rule 23(g)).

The third Rule 23(e)(2) factor, which concerns the adequacy of relief, is also plainly satisfied. The Agreement puts into motion enormous overhauls to Michigan's Medicaid system, pursuant to which the named Plaintiffs and tens of thousands of class members will obtain the primary relief sought in this action: to have intensive home and community-based Medicaid services for children available statewide in sufficient amount, scope, and duration to achieve their purpose.

Given the Agreement's highly positive impact and scope, the seventh *UAW* factor, which considers the public interest, favors preliminary approval as well. Moreover, there is generally "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Moeller*, 649 F.Supp.3d at 543.

The fifth *UAW* factor, which examines the opinions of the Plaintiffs and their counsel, favors preliminary approval. Plaintiffs filed this suit over six years ago and cannot afford to wait longer for relief, particularly when the attainment of comparable relief through continued litigation would be highly uncertain. Counsel

20

has met with the named Plaintiffs and/or their guardians to discuss the proposed settlement, and the named Plaintiffs, with the exception of one who has not yet been reached, unanimously support the Agreement (Ex. 5 ¶ 25; Ex. 6 ¶ 26).

Class counsel, for their part, believe that the Agreement commits Defendants to a wide range of critically important obligations that are not worth sacrificing for an undefined, uncertain, and significantly delayed outcome at trial. Class counsel are national experts in litigating systemic injunctive relief cases and in reforming health care systems, and they believe this settlement to be fair, reasonable, and adequate. (Ex. 5 ¶¶ 19-32; Ex. 6 ¶¶ 23-24). Their judgment "is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 597 (2006).

Class members will have the opportunity to ask questions and object following preliminary approval of the Agreement and notice plan set forth in the proposed Order. For now, because the proposed settlement is in the prenotice stage, the sixth UAW factor is neutral. *Moeller*, 649 F.Supp.3d at 543.

The second *UAW* factor supports preliminary approval. Were the litigation to continue, substantial discovery would ensue, likely involving significant document production and numerous time and resource-intensive depositions. A trial would almost certainly not be held within the next year, and appeals could delay final

resolution for years thereafter. The protracted and uncertain nature of continued litigation favors approval. *IUE-CWA*, 238 F.R.D. at 596-97.

Concerning the third *UAW* factor, the parties served and responded to document requests, interrogatories, and requests for admission prior to reaching the Interim Agreement, and they have since continued to informally exchange additional information. There is no doubt that both parties are sufficiently informed "to adequately assess their case and the desirability of the proposed settlement." *Moeller*, 649 F.Supp.3d at 543; Ex. 5 ¶ 20.

Finally, although Plaintiffs firmly believe in the merits of their remaining claims, they acknowledge the difficulties and uncertainty inherent in achieving through a Court judgment the type of broad-based systemic relief that the Agreement provides (Ex. 5 ¶ 22; Ex. 6 ¶ 23). Given the significant risks involved in continued litigation, the fourth UAW factor favors approval as well.

## IV.   THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE

Following preliminary approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1)(B). The parties' proposed Notice is attached hereto as Ex. 3, and their proposed Distribution Plan is attached hereto as Ex. 4.

The proposed Notice clearly and concisely informs class members of the nature and history of the Action; defines the certified class; describes the Agreement

in detail; provides an opportunity to ask questions and obtain additional information by email; and explains the binding nature of the Agreement. The Notice also includes fill-ins that will contain the date and time of the final fairness and attorney fees hearings. Finally, the Distribution Plan is reasonably calculated to ensure that the Notice will reach class members and other interested parties to the greatest extent possible, and as such comports with due process. *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 900 (6th Cir. 2019).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order attached hereto as Ex. 2, which (1) preliminarily approves the proposed Agreement, (2) approves the proposed Notice (Ex. 3), (3) directs that notice to the class be given in the time and manner described in the Notice Plan (Ex. 4), and (4) sets a schedule for the final fairness hearing to determine final approval of the Agreement and the reasonableness of attorney fees and costs. Exhibit 2 is a .pdf copy of the proposed Order; a Word copy is being uploaded simultaneously herewith.

Dated: January 17, 2025

---

**/s/** Underline Dave Honigman

**COUNSEL FOR THE CLASS**

Dave Honigman (P33146)

1361 E. Big Beaver

**/s/** Kyle Williams

**DISABILITY RIGHTS MICHIGAN**

Kyle M. Williams (P77227)

Nicholas A. Gable (P79069)

Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com

**/s/** Gerard V. Mantese
**MANTESE HONIGMAN, PC**
Dave Honigman (P33146)
Gerard V. Mantese (P34424)
Theresamarie Mantese (P53275)
Emily S. Fields (P82047)
Attorneys for Plaintiffs
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com
gmantese@manteselaw.com
tmantese@manteselaw.com
efields@manteselaw.com

Attorneys for Plaintiffs
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org
ngable@drmich.org

**/s/** John Conway
**JOHN J. CONWAY PC**
John J. Conway, III (P56659)
Attorney for Plaintiffs
Woodward Ave. Ste. 225
Royal Oak, MI 48067
(313) 961-6525
jj@jjconwaylaw.com

**/s/** Kimberly Lewis
**NATIONAL HEALTH LAW PROGRAM**
Kimberly Lewis (CA – 144879)
3701 Wilshire Blvd., Ste. 750
Los Angeles, CA 90010
(919) 968-6308
lewis@healthlaw.org

24

## CERTIFICATE OF SERVICE

I hereby certify that, on January 17, 2025 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Nicholas A. Gable*
Nicholas A. Gable
