UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| **D.D.**, by his parent and Next Friend **B.N.**; **G.P.**, by her parent and Next Friend **A.P.**; **G.G.**, by his mother and Next Friend **M.G.**; **M.M.**, by his parent and Next Friend **C.C.**; **L.G.**, by her parent and Next Friend **T.G.**; **S.W.**, by his parent and Next Friend **C.W.**;   and **K.M.**, by his parent and guardian **L.M.**, | No. 18-cv-11795-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Patricia T. Morris |
| Plaintiffs,<br><br>v. | |
| **MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **ELIZABETH HERTEL**, Director of Michigan Department of Health and Human Services, in her official capacity, | **SUPPLEMENTAL BRIEF AND DOCUMENTATION SUPPORTING MOTION FOR ATTORNEYS' FEES (ECF#111)** |
| Defendants. | |

**SUPPLEMENTAL BRIEF AND DOCUMENTATION SUPPORTING MOTION FOR ATTORNEYS' FEES (ECF#111)**

## I. Introduction

After litigating this case for more than 7 years, and successfully negotiating a settlement, Plaintiffs' counsel seeks an order approving Plaintiffs' counsel's attorneys' fees and expenses. Following extensive negotiations, Defendants and Plaintiffs' Counsel agreed to reimbursement of $3.5 million for fees and expenses incurred and to be incurred through December 31, 2027. These fees encompass the last seven years of work plus an additional 3 years of the expected 5-year implementation period during which time the Plaintiffs' Counsel will collaborate with Defendants to implement the terms of the Settlement.

The Plaintiffs' Counsel agreed to accept $3.5 million for the 9,651 work hours it performed, which was an approximately 40% discount for the more than 10,000 hours of work Class Counsel Team actually performed through May 31, 2024. On top of that, Counsel has performed more than 820 hours of work since May 31, 2024 for which it is not seeking compensation. Finally, Counsel has agreed not to be compensated for work it performs through December 31, 2027.

## II. Qualitative Description of the Work

Prior to filing the initial complaint in June 2018, Counsel invested a great deal of time and effort conducting prefiling due diligence. Counsel diligently investigated the facts and researched the law to make sure the potential class litigation had substantial merit.

1

Counsel invested a good deal of time interviewing multiple potential class representatives and securing the engagement of those best suited to fulfill the obligations of class representatives and prosecute the action to its conclusion. Counsel invested a great deal of time researching and drafting the complaint. Defendants filed a motion to dismiss, and Counsel invested significant time preparing briefing in opposition. Counsel has also invested enormous amounts of time identifying the many problems that plague the delivery of mental health care under Medicaid and attempting to figure out the best solutions. Counsel has read dozens of studies and papers and consulted with myriad experts and stakeholders.

Counsel invested thousands of hours investigating the facts and the law, performing extensive informal discovery and some formal discovery, and thoroughly investigating and researching, among other subjects, Michigan's Medicaid program, and its system for delivering mental health services and health care economics. The terms of the Settlement reflect this knowledge.

Further, class members and their caregivers frequently sought counsel's help in their struggle to obtain medically necessary care. Plaintiffs' counsel invested large amounts of time assisting them. As a result of our efforts to aid these class members and their families, counsel gained a granular understanding of the obstacles Class members confront and the personal and societal costs of failures to deliver care.

Counsel sought and received input from a variety of individuals and organizations, in addition to Class members and their families, including social workers, psychologists, psychiatrists, insurers, experts in health care economics, all manner of participants in the health care economy, nurses, professors, lawyers, charitable organizations serving persons with disabilities, advocacy and stakeholder organizations, and government officials. Prior to settlement, the parties engaged in extensive information gathering. All of this resulted in an Interim Agreement to, among other things, "establish a process for Plaintiffs and Defendants… to negotiate a settlement." Importantly, the Interim Agreement included an "Access to Information" provision staying formal discovery and stating that "the informal exchange of information is encouraged."

Counsel invested significant time collaborating with Defendants to reach decisions regarding, among other things, how to structure the settlement negotiation process, crafting the class definition, class certification, obtaining individual relief for numerous Class members and, most importantly, crafting the systemic reforms that will enable the delivery of medically necessary care to Class members.

A team of lawyers has prosecuted the claims of a Class of youthful Medicaid beneficiaries with mental disorders over a period of more than 7 years, culminating in the Settlement. Through May 31, 2024, Counsel had labored for more than 10,000

3

hours and sought compensation for 9,651 of those hours, which were incurred over a period of roughly 6 years and 4 months.

To support Plaintiffs' Motion for Attorneys' Fees (ECF#111), Plaintiffs attach Exhibits 1-10: detailed time and expense reports substantiating the numbers of hours worked and expenses advanced in this matter. Also noted, the negotiated fees are for work performed through December 31, 2027, and these records include time entries provided to the Defendants during fee negotiations and time entries for work completed during and after the negotiation. Attached are:

1. Mantese Honigman, P.C. Time Entries (February 2018 to June 2024)
2. Mantese Honigman P.C. Expenses
3. Disability Rights Michigan Time Entries for Class Representatives
4. Disability Rights Michigan Time Entries for Class Action (March 2018 to June 2024)
5. Disability Rights Michigan Expenses
6. National Health Law Program Time Entries – Kim Lewis
7. National Health Law Program Time Entries – Sarah Somers
8. J.J. Conway, P.C. Time Entries.
9. Mantese Honigman P.C. Time Entries (June 2024 to Present)
10. Disability Right Michigan Time Records (June 2024 to Present)

4

D.D. is a complex, wide-ranging, enormously consequential civil rights class action seeking to reform institutional practices and conditions preventing the provision of medically necessary care to thousands of children and young adults with mental illnesses and developmental disabilities. In *Hensley*, the US Supreme Court addressed "complex civil rights litigation involving numerous challenges to institutional practices or conditions," and observed that "***this type of litigation is lengthy and demands many hours of lawyers' services***." Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983). (Emphasis supplied).

> "It must also be kept in mind that ***lawyers are not likely to spend unnecessary time on contingency fee cases*** in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, ***the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case***; after all, he won, and might not have, had he been more of a slacker." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). (Emphasis supplied).

The magnitude of the stakes contingent on the outcome of litigation is extremely important. The more consequential the stakes, the more time it is reasonable to invest to achieve a favorable outcome.[1] When the stakes are more

---

[1] Janet Cooper Alexander, Contingent Fees and Class Actions, 47 DePaul L. Rev. 347, 350 (1998) ("[F]ees are proportional to the recovery.... In statutory fee-shifting cases as well, larger recoveries typically result in larger fees: larger stakes justify, in economic terms, more intensive litigation efforts, and lawyers recognize that courts will look to the amount of the recovery in determining whether hours worked were ' reasonable'.")

consequential, it is likewise more reasonable to invest the labor of more senior, more experienced, and more able attorneys who charge greater hourly fees.

The value of the relief that counsel ultimately obtains for the Class and the public is accorded great weight, especially in civil rights litigation like ours that challenges institutional practices and conditions impacting large numbers of people:

> "The most critical factor is the degree of success obtained. Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions." Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).

Here, the relief obtained by counsel for the Class was outstanding, and the large investment of time has proven to have been warranted and reasonable.

Each of the hundreds of time expenditures related to each of the thousands of tasks that were performed over the past 7 years was motivated by counsel's desire to obtain life-changing relief for thousands of young people. At the time counsel performed the work, counsel believed that those expenditures of time were prudent investments that advanced efforts to obtain relief of great consequence to current and future generations of Michigan children and young adults and the public.

Counsel cautions against critical ex post facto judgments regarding the wisdom of the hours expended evaluating remedies to address the State of Michigan's civil rights violations by persons upon whose shoulders did not rest, as

it did ours, the fate of thousands of vulnerable children and young adults whose lives might be tragically impacted if we left any stone unturned in our efforts to address tremendously complex problems regarding the delivery of mental health care that have resisted solution for decades. The catastrophic consequences to class members without access to medically necessary mental and behavioral healthcare services required counsel to spare no effort to devise solutions to problems that have been building unaddressed for decades.

> "The defendants object to many of the hours billed by the attorneys on the grounds that these hours did not contribute to the ultimate success achieved by the plaintiffs. We believe that this is an overly stringent standard for awarding fees. ***The question is not*** whether a party prevailed on a particular motion or ***whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed***." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990)

Each of the thousands of time expenditures related to each of the thousands of tasks that we performed over the past 7 years was motivated by our desire to obtain life-changing relief for thousands of young people. At the time counsel performed the work, they believed that those expenditures of time were prudent investments that advanced our efforts to obtain relief of great consequence to current and future generations of Michigan children and young adults and the public.

7

### III. Conclusion

The decisions counsel made to perform the tasks that came to constitute the entire D.D. body of work fell well within the range of judgment of a reasonable attorney at those points in time when the work was performed. Counsel negotiated a reasonable resolution of fees that involved plaintiffs' waiver of compensation for seven figures, all done for the goal of obtaining life-changing relief for our clients.

Respectfully submitted,

/**s**/ Dave Honigman
**Counsel for the Class**
Dave Honigman (P33146)
1361 E. Big Beaver  Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com


/**s**/ Gerard V. Mantese
**Mantese Honigman, PC**
Dave Honigman (P33146)
Gerard V. Mantese (P34424)
Theresamarie Mantese (P53275)
Emily S. Fields (P82047)
Attorneys for Plaintiffs
1361 E. Big Beaver  Troy, MI 48083
(248) 457-9200
dhonigman@manteselaw.com
gmantese@manteselaw.com
tmantese@manteselaw.com
efields@manteselaw.com

/**s**/ Kyle Williams
**Disability Rights Michigan**
Kyle M. Williams (P77227)
Attorney for Plaintiffs
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org

/**s**/ John Conway
**John J. Conway PC**
John J. Conway, III (P56659)
Attorney for Plaintiffs
Woodward Ave. Ste. 225
Royal Oak, MI 48067
(313) 961-6525
jj@jjconwaylaw.com

/**s**/ Kimberly Lewis
**National Health Law Program**
Kimberly Lewis (CA – 144879)
3701 Wilshire Blvd., Ste. 750
Los Angeles, CA 90010
(919) 968-6308
lewis@healthlaw.org

## CERTIFICATE OF SERVICE

I hereby certify that, on April 25, 2025 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brenda Ren*
Brenda Ren
